**ROBERT J. ROSATI** #112006
ERISA Law Group
2055 San Joaquin Street
Fresno, CA 93721
Telephone:(559)256-9800
Telefax:(559)256-9795
e-mail: robert@erisalg.com
*pro hac vice*

Attorney for Plaintiff,
PHILIP HANSEN

FILED ___ LODGED
___ RECEIVED ___ COPY
FEB 07 2011
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

## UNITED STATES DISTRICT COURT FOR

## ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| PHILIP HANSEN,<br><br>                    Plaintiff,<br><br>v.<br><br>MOTOROLA DISABILITY INCOME PLAN; MOTOROLA, INC.,<br><br>                    Defendants. | No.  CV-11-251-PHX-DKD<br><br>**COMPLAINT FOR DECLARATORY RELIEF<br>AND STATUTORY PENALTIES** |

Plaintiff Philip Hansen ("Plaintiff") alleges as follows:

### JURISDICTION

1.  Plaintiff's claims for relief arise under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

### VENUE

2.  Venue is proper in the Phoenix Division in the District of Arizona because the acts and occurrences giving rise to Plaintiff's claim for relief took place in Maricopa County, Arizona in that Plaintiff was a resident of Maricopa County, Arizona, when Defendant

1  terminated his long-term disability benefits. Therefore, 29 U.S.C. section 1132(e)(2) provides
2  for venue in this court.

### PARTIES

3.  Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Motorola Disability Income Plan ("Plan") and thereby entitled to receive benefits therefrom. Plaintiff was a participant because he was an employee of Motorola, which established the Motorola Disability Income Plan.

4.  Defendant the Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

5.  Defendant, Motorola Inc., ("Motorola") is the plan administrator and, as such and as relevant here, is obligated to comply with certain disclosure requirements.

### FIRST CLAIM FOR RELIEF
(Against The Plan, only)

6.  Plaintiff's LTD claim was initially approved by The Plan's then-claims administrator Mutual of Omaha. Motorola thereafter sequentially contracted with Metropolitan Life Insurance Company ("MetLife") to be claims administrator of The Plan and then, effective January 2009, with Unum Life Insurance Company of America ("Unum") to be claims administrator of The Plan.

7.  The Plan provides long-term disability benefits after an elimination period of 180 days, which, for a person under the age of 61 at the time the disability occurred, as was Plaintiff herein, such benefits potentially could continue until age 65.

8.  The Plan has the following relevant definitions:

   A.  Disability is defined as:

   "After qualifying for and receiving payment of one hundred eighty (180) days of Short Term Disability under Section 5, the ongoing continuous inability of the Participant to engage in any Substantial and Gainful Employment by reason of meeting a medically determinable physical or mental impairment that can be expected to be of a long-continued and indefinite duration. During this time of Disability, the Participant cannot be engaged in his or her occupation or any other Substantial and Gainful employment, and must be under the regular care and attendance (no less than one

COMPLAINT FOR DECLARATORY RELIEF

2

visit in a consecutive thirty (30) day period unless otherwise waived by the Plan Administrator) of a Physician qualified to treat the disabling condition and to determine functional abilities of the Participant as it applies to any occupation or the routine activities of daily living. The Plan Administrator, in its sole and complete discretion, may require objective evidence of a Participant's Disability."

B.    Substantial and Gainful employment is defined as:

"Employment that would afford you earnings potential which may be determined by using a labor market survey) that equals of exceeds your Long-Term Disability or Short-Term Disability benefits; or Any Occupation that the Plan Administrator, in its discretion, determines to be substantial and gainful employment."

C.    "Objective Evidence" is not defined in the plan documents.

D.    Plan Section 2.18, states,

"'Mental Nervous, Alcohol, Drug-Related Condition' means conditions identified in Exhibit E, as referenced according to the American Medical Association International Classification of Diseases, 9th Edition, Clinical Modifications, for which Long Term Disability Benefits under the Plan are limited pursuant to Subsection 6.5(h)."

E.    Plan Subsection 6.5(h), states,

"if the Participant is Disabled due to a Mental, Nervous, Alcohol, or Drug-Related Condition that is the Participant's primary diagnosis for his or her Disability, the last day of the calendar month in which the Participant reaches the lifetime aggregate maximum benefit of twenty-four (24) months of Long-Term Disability Benefits under Subsection 6.4 for one or more Disability(ies) for which a Mental, Nervous, Alcohol, or Drug-Related Condition is the primary diagnosis or January 1, 2005, if later;"

F.    The Motorola Summary Plan Description, page 79, states that if the disability is caused *primarily* by a mental, nervous or alcohol related condition, there is a maximum of 24 months of long term disability payments. It also states that, "You will be notified by the Plan Administrator if your mental, nervous. . . . condition is subject to the 24-month limitation."

9.    Plaintiff was employed by Motorola as a Senior Software Engineer.

10.   Plaintiff became disabled in May 2004.

11.   By letter dated January 10, 2005, Mutual of Omaha notified Plaintiff The Plan

COMPLAINT FOR DECLARATORY RELIEF

3

approved payment of long term disability ("LTD") benefits to him.

12. The Plan instructed Plaintiff to apply for Social Security Disability Income ("SSDI") benefits and arranged for Allsup to assist him in doing so. Pursuant to a request by The Plan, on August 11, 2005, Allsup notified Mutual of Omaha that it has assisted Plaintiff in filing a request for reconsideration of his request for SSDI benefits. His application had been denied on July 12, 2005.

13. On January 19, 2006, Allsup notified Mutual of Omaha that Plaintiff's application for SSDI had been denied and that a request for a hearing had been sent that day.

14. By letter dated July 25, 2006, Allsup, Inc., submitted additional records to the Social Security Administration ("SSA") in an effort to overturn the denial of Plaintiff's SSDI application. Allsup pointed out that multiple doctors have opined that Plaintiff is incapable of working part or full time and that Plaintiff has been diagnosed with central sleep disorder and has degenerative conditions of his back.

15. By letter dated September 19, 2007, the SSA found Plaintiff disabled since May 7, 2004 and awarded him SSDI benefits.

16. A December 12, 2007, notation by MetLife states Plaintiff's claim had been approved through December 31, 2023, at which time the claim would be ended due to reaching maximum duration.

17. By letter dated May 28, 2008, MetLife notified Plaintiff that it had determined that detailed medical updates would only be required on an annual basis and his claim had been assigned to its Special Handling Unit.

18. A different May 28, 2008, letter purportedly from MetLife to Plaintiff, this one subsequently produced by Unum, states that his benefits have been approved through May 31, 2009. It purportedly notified Plaintiff that it would periodically require updated medical records.

19. By letter dated November 26, 2008, Unum notified Plaintiff that it would take over the administration of the Plan and payment of benefits effective January 1, 2009.

20. Motorola and Unum entered into a written agreement whereby Unum would act as claims administrator of The Plan effective January 1, 2009. Plaintiff cannot plead the actual

relevant terms of that agreement, because in order to obtain a copy of that agreement, he was required to agree to treat it as confidential and, not disclose it other than as necessary in connection with Plaintiff's claim and any related litigation, and not file it or excerpts of it without prior notice to Motorola.

21. However, under the terms of the agreement between Motorola and Unum, Unum's authority regarding certain claims, including Plaintiff's claim is limited to paying monthly benefits, until and unless two specified conditions precedent, which Plaintiff cannot disclose due to the protective agreement between himself and Motorola, occurred. By letter dated July 28, 2010, to Plaintiff's attorney, Motorola conceded that those conditions precedent had not occurred. Therefore, under the terms of the Plan and the agreement between Unum and Motorola, Unum had no authority to terminate Plaintiff's benefits when it did and its action in doing so is and was null and void.

22. On March 27, 2009, Unum noted that the change in definition was not applicable. Request "NA" takeover claim.

23. By letter dated May 15, 2009, Unum notified Plaintiff that "significant weight" would be applied to the SSDI decision and therefore it requested he authorize Unum to obtain his SSA file.

24. On October 23, 2009, Unum noted that it had a vocational resource consultation.

25. On October 26, 2009, Unum noted that it performed an occupational analysis.

26. By letter dated November 23, 2009, Unum terminated Plaintiff's LTD benefits. In that letter, Unum quoted the definition of disabled as follows:

> "After qualifying for and receiving payment of one hundred eighty (180) days of short term disability benefits under Section 5, the ongoing continuous inability of the Participant to engage in any Substantial and Gainful Employment by reason of meeting a medically determinable physical or mental impairment that can be expected to be of a long-continued and indefinite duration. During this time of Disability, the Participant cannot be engaged in his or her occupation or any Substantial or Gainful Employment and must be under the regular care and attendance (no less than one visit in a thirty (30) day period unless otherwise waived by the Plan Administrator) or a Physician qualified to treat the disabling condition and to determine functional abilities of the Participant as it applies to any occupation. The Plan Administrator, in its sole

COMPLAINT FOR DECLARATORY RELIEF

5

and complete discretion, may require objective evidence of a Participant's Disability. In the case of a physical or mental impairment that cannot be measured by objective evidence, the Plan Administrator may determine, in its sole discretion, to consider other non-objective evidence of a Participant's Disability."

This definition is different from the definition in The Plan which is quoted in Paragraph 8.A., above.

27. By letter dated December 3, 2009, Plaintiff's counsel requested a copy of Plaintiff's file from Unum.

28. By letter dated May 15, 2010, Plaintiff appealed the termination of his LTD benefits. As part of that appeal, Plaintiff's attorney wrote:

"In light of the foregoing, I submit that the following facts and conclusions are simply irrefutable and unrebutted and therefore established beyond dispute in any future litigation between Mr. Hansen and Unum, unless Unum explicitly addresses these facts and conclusions, presents relevant, necessary, and admissible evidence placing these facts and conclusions in doubt or in dispute. These undisputed facts and conclusions are:

A. That the Arizona standards of "totally disabled" is saved from preemption by ERISA, supercedes the Policy definition to the extent the two are inconsistent, and applies here, as explained in    Sections VI of the appeal.

B. That Mr. Hansen's status and conditions are correctly summarized and presented in Sections II, VIII and X, of this appeal.

C. That Unum's decision terminating benefits is contrary to the evidence that is summarized in Sections XII of the appeal.

D. That Unum failed to properly consider pain as a disabling condition as discussed in Section XIII of the appeal.

E. That Unum failed to properly consider fatigue as a disabling condition as discussed in Section XIV of the appeal.

F. That Unum failed to properly consider the side effects of medications as a disabling condition as discussed in Section XV of the appeal.

G. That Unum failed to properly consider mental clouding as a disabling condition as discussed in Section XVI of the appeal.

COMPLAINT FOR DECLARATORY RELIEF
6

    H.    That Dr. Clinton's opinion is unreliable and does not support a termination of benefits as discussed in Sections XX of the appeal.

    I.    That Unum's Occupational Analysis is invalid, as discussed in Section XXII of the appeal.

    J.    That Unum intentionally withheld documents from me as discussed in Section XXIV of this appeal.

    K.    That Unum dumped Mr. Hansen's claim without regard to the facts of his disability as discussed in Section XIX of the appeal.

    L.    That Unum improperly terminated Mr. Hansen's benefits based on a mental limitation as discussed in Section IX of this appeal.

To the extent that you disagree with any of these facts or conclusions, you must explicitly state your reasons for doing so and provide evidence to support your disagreements. Otherwise the Plan will be bound these facts and conclusions in subsequent litigation regarding Mr. Hansen's entitlement to LTD benefits."

29. By letter dated August 6, 2010, Unum denied Plaintiff's appeal from the termination of his LTD benefits, stating that it agrees Plaintiff is disabled, but concluded he is disabled by a mental illness, which is subject to a 24 month limitation of benefits. Unum again quoted the definition of "disabled" quoted in Paragraph 26, above. Unum asserted Plaintiff's maximum benefits for mental illness had been paid as of November 3, 2006.

30. None of The Plan's claim administrators previously asserted that LTD benefits were being paid under the mental illness limitation and therefore limited to 24 months.

31. At all times mentioned herein Plaintiff was, and continues to be totally disabled under The Plan's definition of totally disabled and entitled to benefits under the terms of The Plan, The Plan's 24 month limitation of benefits due to mental illness: (a) is inapplicable at all; and/or (b) cannot be relied upon until notice from The Plan Administrator, which never occurred.

32. The Plan denied Plaintiff a full and fair review of his claim for benefits in violation of 29 U.S.C. §1133 and its implementing Regulations. Specifically:

    A.    29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendants

herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

    B.    The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133. These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, including Defendant The Plan herein, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

    i.    Such procedures comply with the specifications of the Regulations.

    ii.    The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Plan provisions have been applied consistently with respect to similarly situated claimants.

    iii.    Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Plan's

review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.  The Plan is required to provide a full and fair review of any adverse determination which includes:

    a.  That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

    b.  A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to The Plan concerning the denied

benefit without regard to whether such statement was relied upon in making the benefit determination.

    c.    The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

    d.    The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

    e.    The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of The Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

    f.    The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

33.    The Plan denied Plaintiff a full and fair review as follows:

    A.    The Plan does not have claims procedures which contain administrative

processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Plan provisions have been applied consistently with respect to similarly situated claimants.

B.  Unum, when terminating Plaintiff's claim for LTD benefits by letter dated November 23, 2009, did not provide a description of the additional material or information necessary for Plaintiff to perfect the claim or an explanation of why such material or information was necessary.

C.  The Plan failed and refused to provide all relevant documents to Plaintiff for use in his appeals. Specifically, despite Plaintiff's written request for all relevant records submitted prior to the submission of his appeal, the Plan and Unum withheld relevant records, including, but not limited to: (i) claims procedures as specified in Paragraph 32.B.ii; and (ii) statements of policy or guidance with respect to The Plan concerning the denied benefit without regard to whether or not the statement was relied upon in making the benefit determination; occupational information as noted in Paragraph 32; and unredacted financial reward information despite Plaintiff's written demand that it do so.

D.  The Plan did not consider all comments and documents submitted in support of Plaintiff's appeal.

E.  The Plan otherwise violated the Regulations.

34. This Court is required to review the termination of Plaintiff's benefits de novo because:

A.  Although The Plan does grant Motorola discretion; and

B.  Authorizes Motorola to delegate that discretion;

C.  The agreement between Unum and Motorola delegates discretionary authority regarding certain claims, including Plaintiff's claim, only after the occurrence of two specified conditions precedent, which Plaintiff

cannot disclose due to the protective agreement between himself and Motorola.

D. By letter dated July 28, 2010, to Plaintiff's attorney, Motorola conceded that those conditions precedent had not occurred. Therefore, Motorola never delegated discretionary authority over Plaintiff's claim to Unum and Unum's decision to terminate Plaintiff's claim must be reviewed de novo.

35. Alternatively, this Court is required to review that decision with limited deference to the LTD Plan's determination because:

A. The Plan failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials;

B. The Plan utilized medical experts to review Plaintiff's who had a financial conflict of interest, and therefore did not provide a neutral, independent review process; and

C. The Plan's claims personnel have a financial interest in denying and/or terminating claims; and

E. Unum's handling of Plaintiff's claim demonstrated its conflict of interest seriously affected its decision making..

36. Defendant The Plan is collaterally estopped to deny that Plaintiff is totally disabled under The Plan because:

A. Defendant required Plaintiff to apply for Social Security Disability benefits.

B. Plaintiff did so, and was awarded such benefits.

C. Pursuant to the terms of The Plan's all such benefits, except COLAs were paid to or used to decrease Defendant's obligation to Plaintiff.

37. Plaintiff has exhausted all administrative remedies required to be exhausted.

38. Defendant's and Unum's termination of Plaintiff's long-term disability benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Plan.

COMPLAINT FOR DECLARATORY RELIEF

39. An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to long-term disability benefits under The Plan.

40. Plaintiff contends, and Defendant disputes, that Plaintiff is entitled to benefits under the terms of The Plan for long-term disability because Plaintiff contends, and Defendants disputes, that Plaintiff is totally disabled.

41. Plaintiff desires a judicial determination of his rights and a declaration as to which party's contention is correct, together with a declaration that The Plan is obligated to pay long-term disability benefits, under the terms of The Plan, retroactive to the first day his benefits were terminated, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Plan.

42. A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

43. As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of the Policy. Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

**SECOND CAUSE OF ACTION**
(Against Motorola, Inc., only)

44. Plaintiff incorporates by reference paragraphs 1-7, inclusive, and 43 of this Complaint.

45. Pursuant to the requirements of 29 U.S.C. section 1024, Motorola, Inc., as plan administrator, was required to provide to Plaintiff, certain documents upon Plaintiff's request.

46. Pursuant to 20 U.S.C. section 1132(c)(3) failure to comply with a demand for such documents subjects that plan administrator to a penalty of $100.00 per day. That amount was amended by 20 C.F.R. section 2570.502(c-3) to increase the amount of the penalty to

$110.00 per day.

47. By letter dated December 3, 2009, Plaintiff's counsel requested a copy of the policy, SPD, all plan documents, certificates, trust documents and amendments from Motorola.

48. By letter dated January 13, 2010, Plaintiff's counsel again requested the same documents from Motorola.

49. By letter dated February 2, 2010, Motorola produced the SPD and Plan, with the definition of disabled quoted in Paragraph 8.A., above.

50. By letter dated February 5, 2010, Plaintiff's counsel requested documents referenced in the plan documents that were not included in Motorola's production.

51. By letter dated April 2, 2010, Unum provided its claims manual.

52. By letter dated April 7, 2010, Plaintiff's counsel again requested the unproduced documents from Motorola.

53. By letter dated April 8, 2010, Motorola responded to Plaintiff's February 5, 2010, letter, stating that the decision making authority had been delegated to Unum. It claimed confidentiality as to its contract with Unum and the document regarding fiduciary delegation, and stated it was not a plan document.

54. By letter dated April 15, 2010, Plaintiff, through counsel again requested the withheld documents.

55. By letter dated May 17, 2010, Motorola agreed to provide its contract with Unum, if Plaintiff would agree to treat it as confidential and sign a protective agreement.

56. By letter dated May 19, 2010, Plaintiff, through counsel, agreed to Motorola's conditions.

57. By e-mail dated May 26, 2010, Motorola provided a redacted copy of its contract with Unum.

58. By letter dated June 23, 2010, Plaintiff, through counsel, requested the documents withheld in the Unum-Motorola contract by Motorola.

59. By e-mail dated July 12, 2010, Motorola directed Plaintiff to hyperlink to obtain a missing document

COMPLAINT FOR DECLARATORY RELIEF

60. By letter date July 28, 2010, Motorola provided no additional redacted information.

61. Under 20 U.S.C. section 1024, these policies, procedures and standards are plan documents which the plan administrator was obligated to provide to a plan participant, such as Plaintiff, upon demand.

62. Defendant Motorola, Inc. failed and refused to provide these documents to Plaintiff despite numerous demands, until July 28, 2010.

63. Therefore, Defendant Motorola, Inc. should be assessed the statutory penalty of $110.00 per day from the date which all said documents should have been produced – i.e., January 2, 2010, through July 28, 2010, i.e., 207 days at $110.00 per day.

64. Defendant Motorola, Inc., has previously been ordered to pay statutory penalties pursuant to 20 U.S.C. §1024 for failing to provide documents to claimants. Its repeated failure and refusal to comply with its legal obligations warrants imposition of the maximum penalty here.

WHEREFORE, Plaintiff prays judgment as follows:

1. For declaratory judgment against Defendant The Plan, requiring Defendant The Plan to pay long-term disability benefits under the terms of The Plan to Plaintiff for the period to which he is entitled to such benefits, with prejudgment interest on all unpaid benefits, until Plaintiff attains the age of 65 years or until it is determined that Plaintiff is no longer eligible for benefits under the terms of the Policy.

2. Alternatively, if for any reason judgment in favor of Plaintiff is not entered as prayed, for an order remanding the matter to The Plan with instructions to accord Plaintiff a full and fair review of his claim for LTD benefits.

3. For Judgment and penalties against Motorola, Inc. of $110.00 per day, from January 2, 2010, to July 28, 2010, or 207 days at $110.00 per day, or $22,770.00.

4. For attorney's fees pursuant to statute against both defendants.

5. For costs of suit incurred.

6. For such other and further relief as the Court deems just and proper.

DATED: February 2, 2011

*[signature]*
ROBERT J. ROSATI
Attorney for Plaintiff,
PHILIP HANSEN

COMPLAINT FOR DECLARATORY RELIEF